RENDERED:  JULY 12, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1242-MR

THE ESTATE OF JOSHUA ADAM
FUSON, BY ADMINISTRATRIXES,
AMY HICKMAN AND DAFFENY
SNEED FUSON; AUBREY GRACE
FUSON, A MINOR BY AND
THROUGH HER MOTHER AND
NEXT OF FRIEND AMY HICKMAN;
AND VICTORIA PAIGE FUSON                                        APPELLANTS


                          APPEAL FROM MCCRACKEN CIRCUIT COURT
v.                        HONORABLE JOSEPH ROARK, JUDGE
                          ACTION NO. 19-CI-00261


MERCY REGIONAL EMERGENCY
MEDICAL SYSTEM, LLC AND
SCOTT HENDRICKSON                                               APPELLEES


                                    OPINION
                     AFFIRMING IN PART, REVERSING IN PART,
                              AND REMANDING

                              ** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; COMBS AND LAMBERT, JUDGES.

THOMPSON, CHIEF JUDGE:  The Estate of Joshua Adam Fuson, *et al*., appeal

from an order granting summary judgment in favor of Mercy Regional Emergency

Medical System, LLC and Scott Hendrickson. The summary judgment order dismissed the Estate's wrongful death claims against Appellees based on a lapse in the statute of limitations. The order also dismissed the loss of parental consortium claims of Aubrey Grace Fuson and Victoria Paige Fuson, Joshua Fuson's minor daughters, against Appellees. We believe the trial court did not err in dismissing the Estate's claims against Appellees; therefore, we affirm that portion of the summary judgment. We also believe, however, that the trial court did err in dismissing the daughters' claims; therefore, we reverse that portion of the summary judgment and remand for further proceedings.

### **FACTS AND PROCEDURAL HISTORY**

On March 25, 2018, Joshua Fuson ingested methamphetamine and his family called 911. Officers from the Paducah Police Department responded to the apartment. Also, an ambulance affiliated with Appellee Mercy Regional attended. Scott Hendrickson was an emergency medical technician who arrived in the ambulance. Mr. Fuson was ultimately not cooperative with the police or EMTs and was taken to McCracken County Jail. While in custody at the jail, Mr. Fuson suffered a cardiac arrest. He was transported by another ambulance from Mercy Regional to Baptist Health hospital in Paducah. Unfortunately, Mr. Fuson did not recover and was pronounced dead on March 27, 2018.

On April 26, 2019, Amy Hickman and Daffeny Fuson were appointed as co-administrators of Mr. Fuson's estate. On March 25, 2019, Appellants brought the underlying complaint against the City of Paducah, Kentucky, three Paducah Police Department officers, and multiple employees of the McCracken County Jail. Appellants raised claims of wrongful death and loss of parental consortium.[1] Appellees were not named in the complaint at this time.

On July 27, 2022, Appellants moved to amend their complaint and add Appellees. The Estate claimed damages for wrongful death, negligence, and intentional infliction of emotional distress. The daughters, through their mother, Amy Hickman, raised a claim for damages for loss of parental consortium.[2] These claims were brought over four years after Mr. Fuson's death.

Appellees eventually moved for summary judgment alleging that the statute of limitations had run on all the claims raised by Appellants. A hearing was held September 1, 2023. On September 19, 2023, the trial court granted the motion for summary judgment in favor of Appellees. The court held that the causes of action raised by the Estate were required to be brought within one year pursuant to Kentucky Revised Statutes (KRS) 413.140(1)(a), which states: "The following actions shall be commenced within one (1) year after the cause of action

---

[1] Other claims were raised, but they are not pertinent to this appeal.

[2] In September of 2022, Victoria reached the age of majority.

accrued:  (a) An action for an injury to the person of the plaintiff, or of her husband, his wife, child, ward, apprentice, or servant[.]"  The court believed that, by waiting for four years before naming Appellees, the Estate had missed the statute of limitations deadline.

As for the claims of the minor children, the trial court also held that those were barred.  The court held that, because loss of parental consortium claims are derivative of wrongful death claims, and the wrongful death claim in this case is barred by the statute of limitations, the loss of consortium claim must also be barred.

Appellants argued before the court that KRS 413.170(1) should apply to protect the loss of consortium claims.  KRS 413.170(1) states:

> If a person entitled to bring any action mentioned in KRS 413.090 to 413.160, except for a penalty or forfeiture, was, at the time the cause of action accrued, an infant or of unsound mind, the action may be brought within the same number of years after the removal of the disability or death of the person, whichever happens first, allowed to a person without the disability to bring the action after the right accrued.

Appellants argued that because the children were minors at the time of their father's death, they can bring their claims at any time during their infancy or within one year after they reach the age of majority.

The court ruled that KRS 413.170(1) does not resurrect the loss of consortium claim even though the children had not yet reached the age of majority.

The court, citing *Tallman v. City of Elizabethtown*, No. 2006-CA-002542-MR, 2007 WL 3227599 (Ky. App. Nov. 2, 2007), held that the loss of consortium claims were not tolled by KRS 413.170(1) because the children's mother raised other loss of consortium claims on the children's behalf against other defendants; therefore, these loss of consortium claims should have been raised at the same time. The court stated, "initiating a cause of action limits a minor's ability to claim that the statute of limitations is then somehow tolled as to other defendants that are involved in the incident[.]"

This appeal then followed.

## STANDARD OF REVIEW

> The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. . . . "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." Summary "judgment is only proper where the movant shows that the adverse party could not prevail under any circumstances." Consequently, summary judgment must be granted "[o]nly when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor[.]"

*Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citations omitted).

"Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial

-5-

court's decision and will review the issue *de novo*." *Lewis v. B & R Corporation*, 56 S.W.3d 432, 436 (Ky. App. 2001). Statute of limitations issues are also reviewed *de novo*. *Lynn Min. Co. v. Kelly*, 394 S.W.2d 755, 759 (Ky. 1965).

## ANALYSIS

Appellants' first argument on appeal is that the Estate's wrongful death claims were timely filed and not barred by the statute of limitations. Appellants argue that they did not discover the alleged negligent acts of Mr. Hendrickson, the EMT, and Mercy Regional until after they deposed Mr. Hendrickson in March of 2022. They then filed their motion to amend the complaint to add Appellees to the case four months later. They argue that this was within the one-year statute of limitations in KRS 413.140. They claim this was proper due to the "discovery rule."

> The discovery rule, a means by which to identify the "accrual" of a cause of action when an injury is not readily ascertainable or discoverable, was first enunciated in *Tomlinson v. Siehl*, Ky., 459 S.W.2d 166 (1970), and later refined in *Hackworth v. Hart*, Ky., 474 S.W.2d 377 (1971): "[T]he statute begins to run on the date of the discovery of the injury, or from the date it should, in the exercise of ordinary care and diligence, have been discovered." *Id.* at 379. This rule entails knowledge that a plaintiff has a basis for a claim before the statute of limitations begins to run. The knowledge necessary to trigger the statute is two-pronged; one must know: (1) he has been wronged; and, (2) by whom the wrong has been committed. *Drake v. B.F. Goodrich Co.*, 782 F.2d 638, 641 (6th Cir. 1986). *See also Hazel v. General Motors Corp.*, 863 F. Supp. 435, 438 (W.D. Ky. 1994) ("Under

-6-

the 'discovery rule,' a cause of action will not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only that he has been injured but also that his injury may have been caused by the defendant's conduct.").

*Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2000). In addition, "[a] person who has knowledge of an injury is put on 'notice to investigate' and discover, within the statutory time constraints, the identity of the tortfeasor." *McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. App. 1999) (footnote and citation omitted).

We find no merit in Appellants' argument. Mr. Fuson was injured in 2018. At that time, the Estate knew about the involvement of Mercy Regional and Mr. Hendrickson in Mr. Fuson's medical emergency. Appellees were even mentioned in the original complaint. The Estate had a duty to investigate Appellees' involvement at that time and could have, with reasonable diligence, discovered any alleged negligent activity on Appellees' part. The discovery rule does not apply to toll the statute of limitations for over three years in this case. The trial court did not err in dismissing the Estate's claims against Appellees.

Appellants also, very briefly, argue in their reply brief that Appellees actively concealed their allegedly negligent involvement with Mr. Fuson; therefore, the statute of limitations should have been tolled. Appellants do not cite to where this argument was raised in the trial court and, after reviewing the record,

we could not find it.  This argument is waived.  *Skaggs v. Assad, by and through Assad*, 712 S.W.2d 947, 950 (Ky. 1986); Kentucky Rules of Appellate Procedure ("RAP") 32(A)(4).  Furthermore, this argument was not raised in Appellants' initial brief, only the reply brief.  Such is not allowed and is another reason this issue is waived.  *Seeger Enterprises, Inc. v. Town & Country Bank and Tr. Company*, 518 S.W.3d 791, 796 (Ky. App. 2017).

Appellants' next argument on appeal is that the court erred in concluding that the children's loss of consortium claim is barred because the Estate's wrongful death claim is barred by the running of the applicable statute of limitations.  We believe the trial court erred in its decision as to this issue.

The trial court and Appellees are correct that a loss of parental consortium claim derives from another cause of action, the wrongful death of a parent.

> [A] loss of parental consortium claim is a common-law cause of action.  In a parental consortium claim, a minor child is compensated for the loss of a parent's love and affection.  A loss of parental consortium claim and a wrongful death claim are separate and independent claims.  However, a claim for loss of parental consortium is limited to cases involving the wrongful death of a parent.

*Johnson v. Basil as Next Friend of Johnson*, 584 S.W.3d 777, 782-83 (Ky. App. 2019) (internal quotation marks and citations omitted).  A loss of consortium claim "can be brought independently of a wrongful death claim, but most often are not,

-8-

as there must be some determination that the death was wrongfully caused in both types of actions as they 'derive from the same injury.'" *Pete v. Anderson*, 413 S.W.3d 291, 302 (Ky. 2013) (Noble, J., concurring in part and dissenting in part) (citation omitted). We reiterate that "[e]ven though a wrongful death action and a loss of consortium claim may arise from the same injury, they belong to separate legal entities and consequently should not be treated as a single claim." *Giuliani v. Guiler*, 951 S.W.2d 318, 322 (Ky. 1997).

We believe that since a wrongful death claim and loss of parental consortium claim are separate and distinct legal claims, the Estate's inability to bring a wrongful death claim due to failing to abide by the statute of limitations is not fatal to the children's loss of parental consortium claim. Had the Estate properly raised the wrongful death claim and lost, then the children would not be able to claim loss of parental consortium because there would be a holding by the jury or court that the father's death was not wrongful. *See Pete*, 413 S.W.3d at 303-04 (Noble, J., concurring in part and dissenting in part); *Rehm v. Ford Motor Co.*, 365 S.W.3d 570, 578 (Ky. App. 2011); *Godbey v. University Hospital of Albert B. Chandler Medical Center, Inc.*, 975 S.W.2d 104, 106 (Ky. App. 1998).[3]

---

[3] *Rehm* and *Godbey* concern loss of spousal consortium claims. Spousal consortium and parental consortium claims are treated similarly by courts in the Commonwealth; therefore, case law concerning spousal consortium is relevant to cases concerning parental consortium.

Here, however, there has been no legal finding that Appellees were not in some way liable for the death of Mr. Fuson.

A hypothetical would be illustrative at this point. A child has two parents. One parent dies due to the negligence of a third party and the other parent becomes the personal representative of the estate. Then, for some reason, the living parent decides not to bring a wrongful death claim on behalf of the estate. Should the child be precluded from ever bringing a loss of parental consortium claim? We believe such an outcome would be unreasonable because loss of consortium and wrongful death claims are separate legal entities. *Giuliani*, *supra*. Failing to bring a wrongful death claim at all and losing the ability to bring such a claim due to the statute of limitations is the same thing by a different name.

We believe the case of *Department of Education v. Blevins*, 707 S.W.2d 782 (Ky. 1986),[4] supports our conclusion. In *Blevins*, the Kentucky Supreme Court was analyzing KRS 411.135, which states:

> In a wrongful death action in which the decedent was a minor child, the surviving parent, or parents, may recover for loss of affection and companionship that would have been derived from such child during its minority, in addition to all other elements of the damage usually recoverable in a wrongful death action.

[4] The Kentucky Supreme Court in *Blevins* revived a loss of consortium claim during a cause of action brought in the Board of Claims. The Board of Claims Act has since been amended and this kind of collateral claim is no longer viable in the Board of Claims. KRS 49.020(5); *Williams v. Kentucky Dep't of Educ.*, 113 S.W.3d 145, 156 (Ky. 2003); *Bayless v. Boyer*, 180 S.W.3d 439, 449 (Ky. 2005). While the conclusion reached in *Blevins* has been superseded by statute, we believe our reliance on *Blevins* is still appropriate.

-10-

In other words, this is a statutory loss of consortium cause of action for a parent when there is a death of a child. The Court in that case held that a wrongful death claim and this loss of consortium claim were separate legal entities, and that "[t]he parents have [a loss of consortium] claim without regard to whether the personal representative of the decedent ever asserts a claim for wrongful death, and, indeed, without regard to whether a personal representative is ever appointed." *Blevins*, 707 S.W.2d at 785.

We find further support in the case of *Martin v. Ohio County Hospital Corporation*, 295 S.W.3d 104 (Ky. 2009). In that case, which was a spousal consortium case, the Kentucky Supreme Court cited with approval to the above holding in *Blevins*. Furthermore, the Court held that "[a] loss of consortium action can continue even when the injured spouse or the estate has settled or otherwise been excluded from an action, because there is not a 'common and undivided interest' in the spouse's claim for loss of consortium and the underlying tort claim." *Id.* at 109 (citations omitted).

We conclude that the trial court erred by dismissing the children's loss of consortium claim based on the Estate's failure to timely file the wrongful death claim against Appellees. There has been no legal finding that Appellees' actions did not in some way contribute to the death of Mr. Fuson. In addition, the wrongful death claim and the loss of parental consortium claim are separate causes

of action. While they may derive from the same situation, the death of Mr. Fuson, they are independent of each other. In other words, we do not believe that an estate is required to bring a wrongful death claim in order for a child to bring a loss of parental consortium claim. As we are remanding for additional proceedings, the children will still need to prove that Appellees were somehow responsible for Mr. Fuson's death in order to recover for the loss of consortium claim.

Appellants' final argument on appeal is that the loss of parental consortium claim was tolled due to the children's status as minors and KRS 413.170(1). We agree.

The trial court held that the children's mother should have raised the loss of parental consortium claims against Appellees at the same time she raised the claim against the other defendants, and by not doing so, the claims were now time barred. The court relied on *Tallman*, *supra*, to come to this conclusion.

In *Tallman*, Harold Lee, Jr. was killed by an Elizabethtown, Kentucky police officer on July 3, 2001. In June of 2002, Mr. Lee's estate filed a lawsuit against the Elizabethtown Police Department and the officer in the United States District Court for the Western District of Kentucky. The estate raised numerous causes of action and Tina Clark, as guardian and next friend of Mr. Lee's minor children, raised a loss of parental consortium claim.

-12-

On May 21, 2004, the district court granted summary judgment in favor of the defendants. The court dismissed the federal claims with prejudice and the state law claims, which included the loss of consortium claim, without prejudice. In June of 2004, the plaintiffs appealed the dismissal of the federal claims. On January 23, 2006, the Sixth Circuit affirmed the summary judgment.

In April of 2006, the estate then filed a wrongful death claim in the Hardin Circuit Court. The parental consortium claim was also raised again. The defendants eventually moved for summary judgment and raised defenses of *res judicata* and statute of limitations. The trial court granted the summary judgment and the plaintiffs appealed to this Court.

This Court focused solely on the statute of limitations issue. The court discussed how KRS 413.140 would generally bar the claims because they should have been raised within one year. The plaintiffs argued that KRS 413.270 would toll that statute of limitations. KRS 413.270 states:

> (1) If an action is commenced in due time and in good faith in any court of this state and the defendants or any of them make defense, and it is adjudged that the court has no jurisdiction of the action, the plaintiff or his representative may, within ninety (90) days from the time of that judgment, commence a new action in the proper court. The time between the commencement of the first and last action shall not be counted in applying any statute of limitation.

> (2) As used in this section, "court" means all courts, commissions, and boards which are judicial or quasi-

judicial tribunals authorized by the Constitution or statutes of the Commonwealth of Kentucky or of the United States of America.

The plaintiffs argued that their complaint was timely filed in Hardin Circuit Court within 90 days after the Sixth Circuit rendered its opinion.

The Court of Appeals held that KRS 413.270 only tolls the statute of limitations when a jurisdictional issue is being appealed, but the plaintiffs did not appeal a jurisdictional issue. The Court then held, as it pertained to the wrongful death claim, that the jurisdictional issues were

> finally decided by the district court in its order of dismissal on May 21, 2004. As the issue of jurisdiction was not appealed to the Sixth Circuit, the Estate was required to file its complaint in state court within ninety days of the district court's order. It is undisputed that the Estate filed its complaint in Hardin Circuit Court on April 17, 2006. Accordingly, summary judgment was proper[.]

*Tallman*, 2007 WL 3227599, at *3 (citations omitted).

As to the parental consortium claims, the Court held the following:

> The Estate alternatively argues that the minor children's claims for loss of parental consortium were not barred by the statute of limitations. The Estate contends that KRS 413.170(1) tolls the limitations period of a minor's state law claim until the minor reaches majority. Here, however, the children's claims were prosecuted on their behalf by their mother, as guardian and next friend. In light of the procedural history of this case, we are not persuaded that KRS 413.170(1) tolled the children's claims, and the Estate offers no other authority to support

-14-

> its position. Consequently, we find this argument to be without merit.

*Id.*

The trial court in the case *sub judice* and Appellees argue that the *Tallman* holding stands for the proposition that if a guardian or next friend raises a cause of action on behalf of a minor, all causes of action available to that minor must be raised or fall afoul of a statute of limitations. We disagree. In *Tallman*, the issue the Court ruled upon was whether the 90-day tolling provision in KRS 413.270 applied. The Court even references the "procedural history of this case" when discussing the parental consortium claim. We believe the Court in *Tallman* was saying that because the children's guardian raised the parental consortium claim in federal court, and did not timely raise the claim again in state court, the minor children lost out on their chance to raise the same cause of action later. In other words, by first raising this claim against the officer in federal court, the claim would then proceed like any other claim brought by an adult. This seems to be a reasonable outcome.

Here, the children's mother did raise loss of parental consortium claims in 2019, but not against Appellees. The loss of consortium claims brought against Appellees were new and against new defendants. The loss of consortium claims raised in *Tallman* in federal court and state court were not different. We

-15-

believe that is a key distinction and why the minor tolling provision in KRS 413.170(1) should apply in this case.

Furthermore, even if the *Tallman* holding is as Appellees argue,[5] it is an unpublished case and not binding upon this Court. RAP 40(D)(1); RAP 41(A); *Hardin v. Jefferson Cnty. Board of Education*, 673 S.W.3d 437, 443 (Ky. App. 2023). KRS 413.170(1) stands for the proposition that a minor may bring a cause of action at any time while he is a minor and statutes of limitations do not begin running until the minor reaches the age of majority. *Hopkins v. Virgin*, 74 Ky. 677, 678 (1876). The plain language of KRS 413.170(1) allows the children in this case to prosecute their loss of consortium claim at any time. When engaging in statutory interpretation,

> our main goal is "to give effect to the intent of the General Assembly." The clearest indicator of that intent is the "language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration." And "[w]here the words used in a statute are clear and unambiguous and express the legislative intent, there is no room for construction and the statute must be accepted as written."

*Bell v. Bell*, 423 S.W.3d 219, 223 (Ky. 2014) (footnotes and citations omitted).

> Early on, courts in the Commonwealth recognized our responsibility to protect the interests of children. The

---

[5] A problem with the *Tallman* opinion regarding the parental consortium claim is that it is extremely short. The paragraph cited earlier in this Opinion is the entirety of the Court's analysis of the issue.

-16-

earliest case noting this special relationship cited courts of chancery in England which directed the estates of children for their protection. "It is the especial duty of the chancellor to guard the interests of infants, and the law has carefully provided that their rights shall be protected."

*Jones by and through Jones v. IC Bus, LLC*, 626 S.W.3d 661, 674 (Ky. App. 2020) (citations omitted). We decline to follow the reasoning in *Tallman* and believe the clear language of the statute controls.

## CONCLUSION

Based on the foregoing, we affirm the trial court's conclusion that the Estate's claims against Appellees are time barred. We also reverse the trial court's conclusion that the children's loss of parental consortium claims are barred. We remand for additional proceedings.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Chad McCoy
Bardstown, Kentucky

BRIEF FOR APPELLEES:

James A. Sigler
Paducah, Kentucky